Argued July 8, affirmed July 28, 1966

# BUSH *v.* STATE TAX COMMISSION

416 P. 2d 1021

*Randall S. Jones,* Portland, argued the cause for appellant. With him on the brief were Garthe Brown and James R. Carskadon, Jr., Portland.

*Walter J. Apley,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General, and Gerald F. Bartz, Assistant Attorney General, Salem.

Before McALLISTER, Chief Justice, and O'CONNELL, GOODWIN, LUSK and HAMMOND, Justices.

HAMMOND, J. (Pro Tempore).

This is an appeal from a decree of the Oregon Tax Court denying a claim of plaintiff of a bad debt loss of $30,000 charged off on plaintiff's tax return for 1962. Plaintiff contended that she made loans to her daughter in such amount and that the debt became worthless in 1962.

The court held "that plaintiff failed to show a loan was made, that if such a loan was made, it was an arms'-length transaction, and that the debt, if any, was worthless."

It was contended by plaintiff that in 1961 she loaned $7,500 to her daughter Margaret Glover and to her then son-in-law Willard Glover, to be used by them as a down payment on the purchase of a cocktail lounge and restaurant called The Broiler. She and her daughter testified that later in 1961 and in 1962 plaintiff loaned additional sums to the daughter and son-in-law and to The Broiler, Inc., for the total sum of $30,000. Willard Glover has since died.

The claimed transactions were stated to have all been in cash. It was contended that the additional loans were for remodeling done at The Broiler and payment was made in sums of four or five thousand dollars at a time. Except for a chattel mortgage later referred to, no records of any kind were kept of the loans or of their application upon obligations of the borrowers. The testimony was that the first $7,500 was loaned in cash rather than by check because "[i]t was Sunday." Plaintiff contends that money for the loans came from $100,000 in cash obtained by her and her husband in a transaction involving a ranch.

The debt in question is shown on plaintiff's 1962 tax return as a loan to Margaret Motter. The explanation given was that the name used was intended to refer to Margaret Glover, whose married name was Motter prior to 1953. On August 28, 1962, there was given to plaintiff a note for $30,000 executed for The Broiler, Inc. by Margaret Glover, president. The note was secured by a chattel mortgage of the same date, covering the contents of "The Broiler." The chattel mortgage was executed by Margaret Glover as an individual, who thereon certified that she was the sole owner of the property and that the same was paid for in full.

It was explained that the note and mortgage were given to plaintiff because Margaret Glover had pending a sale of The Broiler to a Mr. Butler for $50,000. Margaret testified, "It was suggested to me that this was the procedure that you do when you are going to sell it so she could get her money back from the next buyer." The chattel mortgage was, however, released, and while Margaret Glover received $3,000 as a down payment on the sale to Butler, no part thereof was repaid to plaintiff. The money instead was used as a down payment on a club in Anchorage, Alaska.

The record is silent as to the disposition or present status of the note for $30,000 given by The Broiler, Inc. to plaintiff. No explanation is given of the status or disposition of Margaret Glover's interest as vendor in the contract for the sale of The Broiler. Plaintiff admits she has made no attempt to reduce the claimed debt to judgment. She contends that neither Mrs. Glover nor the corporation had the money to make repayment.

Plaintiff testified that when, in 1961, she loaned the original $7,500 for a down payment on The Broiler, she expected repayment from a sale of the Glovers' then business known as Turk's Char Grill and The Little Club. She stated that this was a good business, yet a 1960 tax return on the business showed a taxable profit of only $225.31. The sale of that business was never consummated.

Plaintiff testified that she had made loans and gifts to her daughter many times. She and her daugther cited two instances in which the loans had been repaid.

■ Plaintiff contends that the court is bound by the testimony produced and admitted and may not substitute therefor its own judgment. The premise is that

since the testimony of plaintiff and her daughter has not been directly contradicted or impeached it is entitled to credence, and that she has thereby sustained the burden of proof imposed upon her. ORS 305.427.

■ The trial court is not bound to close its eyes to conditions which would lead reasonable-minded persons to conclude that the alleged transaction did not result in a bad debt which became worthless to the plaintiff in 1962. The relationship of the parties, the attendant circumstances of the claimed transactions and the demeanor of the witnesses who appeared before the court are all matters which the trier of the fact was bound to take into consideration in making his findings. The record discloses no justification for disturbing such findings.

■ "Loans" to members of the family invite close scrutiny. Circumstances surrounding the advancement of money should be studied to determine whether a bona fide debt existed. Martens, Law of Federal Income Taxation, § 30.09; *Hayes v. Commissioner of Internal Revenue,* 17 BTA 86.

■ Apart from the bare statements of the plaintiff and her daughter, there is nothing in the evidence to suggest that such advances as plaintiff may have made were coupled with any desire, hope or expectation that the advances would be repaid. The mere giving of a note and chattel mortgage for the avowed purpose of protecting the plaintiff in the face of a pending sale offer no weight to plaintiff's position, especially since the security was released without payment or explanation. *Hayes v. Commissioner of Internal Revenue,* supra.

■■ Before a bad debt may be deducted from income it must become worthless during the tax year for

which the deduction is claimed. ORS 316.330. *Skarda v. Commissioner of Internal Revenue,* 250 F2d 429 (10th Circuit). The naked conclusion of plaintiff that the obligors "didn't have the money" hardly suffices to meet such test.

Affirmed.