# IN THE OREGON TAX COURT

## GIBBONS et al,
*v.*
## DEPARTMENT OF REVENUE
(TC 1543)

Jack R. Roberts, Shaw & Roberts, P.C., Eugene, represented plaintiffs.

Ted E. Barbera, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered December 15, 1982.

**CARLISLE B. ROBERTS, Judge.**

The plaintiffs appealed from the defendant's Order No. I 81-55, affirming Oregon personal income tax deficiencies for tax years 1975 and 1976. This order was based upon a determination that certain sums received by the plaintiffs were dividends rather than loans.

During the subject years, plaintiff Lawrence Gibbons was the sole shareholder of Allen and Gibbons Logging, Inc., an Oregon corporation. The plaintiffs allege that the amounts determined by the defendant to be dividends were in fact loans by the corporation, not dividends, and should not have been included in the taxable income of the plaintiffs.

Mr. Gibbons alleges that on January 1, 1975, the

corporation owed him $7,977.90. On January 1, 1976, Mr. Gibbons owed the corporation $18,773.18 and on January 1, 1977, Mr. Gibbons owed the corporation $37,742.85. (See Pl Opening Br, at 1.) Amounts paid to Mr. Gibbons were recorded on the corporate books as accounts receivable. Payments by Mr. Gibbons to the corporation were recorded on the corporate books as reductions of the loans received or as loans from Mr. Gibbons to the corporation.

■    The intent of the parties at the time of withdrawal determines the nature of the transaction; subsequent events may corroborate intent. *Tarnell v. U.S.,* 255 F Supp 468 (DC NJ 1966), 18 AFTR2d 5355, 5358.

Whether payments between a corporation and its sole shareholder constitute bona fide loans or taxable income is a question of fact, dependent upon a consideration of the circumstances in each case, with intent of the parties being an important factor. *Tollefsen v. Commissioner,* 431 F2d 511 (2d Cir 1970), 26 AFTR2d 70-5037, *cert denied* 401 US 908 (1971); *Gibbs v. Tomlinson,* 362 F2d 394 (5th Cir 1966), 17 AFTR2d 1251; *Chism's Est. v. Commissioner,* 322 F2d 956 (9th Cir 1963), 12 AFTR2d 5300. A useful discussion of this common tax problem is found in 1 Mertens, *Law of Federal Income Taxation,* § 9.21.

In *Alterman Foods, Inc. v. U.S.,* 611 F2d 866 (Ct Cl 1979), 43 AFTR2d 79-617, the court found that a parent corporation's withdrawals of funds from its subsidiaries were dividends, not loans, even though the corporate books showed a debtor-creditor relationship. The absence of executed notes, designated interest, required collateral and repayment dates were factors supporting the finding.

In giving guidelines to a jury for the determination of whether withdrawals by a plaintiff from his professional corporation were true loans or disguised dividends, the following factors were emphasized in *Epperson v. U.S.,* 473 F Supp 1360 (DC ED Wis 1972), 33 AFTR2d 74-714, *aff'd* 490 F2d 98 (7th Cir 1973), 33 AFTR2d 74-714:

(1)    What was the intention of the borrower and lender, as evidenced by facts?

(2)    Were the alleged loans the subject of a promissory note?

(3)   Were the withdrawals treated as accounts receivable?

(4)   Were withdrawals subject to interest payments?

(5)   Was the lender financially able to make the loans?

(6)   Were specific repayment schedules executed?

(7)   Did the lender make a good-faith effort to have the withdrawals repaid?

(8)   Has the lender customarily paid dividends? (If so, it is not as likely that a dividend would be disguised as a loan.)

Let us consider the circumstances of the instant case. Mr. Gibbons completely controlled his corporation and his bookkeeper. Mr. Gibbons testified that he considered the payment received from his corporation to be a loan and that he intended to repay it. He also testified that no promissory notes were executed in evidence of the alleged indebtedness. No security was required. No interest was required. No time limit was set for repayment. There was no limit to the amount the plaintiff could withdraw. No evidence was presented regarding any formal authorization for loans by the corporate board, although the plaintiff testified that the board knew of the withdrawals because he "talked about them," and the corporate secretary, Jerry Jordan, wrote the checks.

Mr. Gibbons testified that his intent was to repay the amounts provided to him by the corporation. When asked when he planned to repay the alleged loans, the plaintiff replied, "Whenever I had the money to do it."

Evidence was presented that the corporation had retained earnings of $100,862 in 1975 and $140,971 in 1976 from which dividends could have been paid; however, the corporation had never paid a formal dividend. (Def Ex A, Schedule A.)

The plaintiff husband protests that tests used to determine whether withdrawals are loans or dividends lack a weight factor, but he offered no method for establishing and applying such factor. (Pl Opening Br, at 5.)

The court agrees that a weight factor is lacking but,

when the entire situation is visualized, the evidence of intent consists, on the one hand, of mere book entries which categorize the withdrawals as accounts receivable. On the other hand, evidence of intent is found in the facts that the withdrawals were noninterest bearing, required no formal notes of indebtedness, no formal authorization by the corporate board, no time for repayment, no required security and no limit to the amount the plaintiff could withdraw. The evidence further shows that Mr. Gibbons received more from the corporation than he returned. The transactions do not picture a genuine indebtedness.

■　　Important in the court's conclusion is the fact that the corporation has never paid a dividend, even though retained earnings were substantial.

This suit is one more of the numerous examples of taxpayers who regard their solely owned corporations as a "second pocket" for managing their personal finances. The legal concept of the solely owned corporation as a separate legal entity becomes blurred in the owner's mind. When ordinary and proper business records and the normal indicia of business transactions (such as promissory notes) are not made and maintained, the burden of accurately proving income is still imposed on the negligent or errant individual taxpayer. See Mertens, *supra*, § 12.12. The maintenance of records by a taxpayer is a primary requisite for the proper determination of his tax liability. (The federal IRC (1954), § 6001, requires: "Every person liable for any [personal or corporate income] tax imposed by this title * * * shall keep such records, render such statements, make such returns, and comply with such rules and regulations as the Secretary [of the Treasury] may from time to time prescribe." Mr. Gibbons may have been acting in good faith, but it would be poor policy to condone the easy avoidance of income tax through approval of Mr. Gibbons' casual methods in not adequately recording his business transactions.

The weight of the evidence is persuasive that the withdrawals were disguised dividends. Therefore, the defendant's opinion is sustained and its Order No. I 81-55, assessing personal income tax deficiencies to plaintiffs for tax years 1975 and 1976, is affirmed. Defendant is entitled to its costs.