IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| MARTIN L. PARKER | ) | |
| and LUANA K. PARKER, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 101057C |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiffs appeal adjustments Defendant made to their Oregon 2006, 2007, and 2008 income tax returns. The dispute involves claimed deductions for business losses, medical expenses, bad debt losses, and theft losses.

Trial in this matter was held at the Oregon Tax Court and spanned four days: August 31, 2011, September 1, 2011, September 7, 2011, and September 22, 2011. Janet Morton, Licensed Tax Consultant, appeared on behalf of Plaintiffs. Plaintiffs Luana K. Parker (Luana)[1] and Martin L. Parker (Martin) testified. Plaintiffs' other witnesses were Janet Morton and her record keeper, Tracy Hensley. Michelle Warren, Tax Auditor, and Ronald W. Graham, Tax Auditor, appeared on behalf of Defendant.

Plaintiffs' Exhibits 1 through 23 and Defendant's Exhibits A through CC were admitted without objection. Defendant's Closing Arguments were received by the court on September 30, 2011. Plaintiff's Closing Arguments were received by the court on October 14, 2011, and

/ / /

---

[1] When referring to a party in a written decision it is customary for the court to use the last name. However, in this case, the court's Decision recites facts and references to multiple individuals with the same last names, Parker and Holmes. To avoid confusion, the court will use the first name of the individual being referenced.

Plaintiff's Second Closing Argument was received on October 28, 2011, whereupon the record closed.

## I. STATEMENT OF FACTS

Defendant disputes Plaintiffs' claimed deductions for losses from business, medical expenses, ordinary losses, and theft over the course of tax years 2006 through 2008. A broad overview of the facts is below, followed by the specific amounts in dispute.

From 2006 through 2007, Luana testified that she operated a business out of her home in Salem as a "designer" affiliated with Home & Garden Party, Ltd. (HGP). (*See* Ptf's Exs 15.114 – 15.119.) As a designer, she organized parties at homes and businesses to sell home interior products such as candles, pictures, and dishes. (*Id.*) Revenue for the business came from a 30 percent markup included in catalog prices, a 10 percent sales commission, and an additional 3 percent commission on items sold by other designers recruited by Luana (her "down line"). (*Id.*) Business expenses are discussed in more detail below, and included costs for display items, gifts for party hostesses, and travel expenses to attend conferences, conduct parties, and deliver orders. (*Id.*)

Plaintiffs also claimed a deduction for medical expenses incurred by Luana's college-aged son and for breast surgery undergone by Luana in tax year 2006. Luana paid for her surgery by cashier's check dated December 30, 2005. (Ptf's Ex 11.11.)

Plaintiffs claimed a deduction in tax year 2007 for losses stemming from the failure of a trucking business founded by Luana's son-in-law with money provided by Plaintiffs. Luana documented her transfer of money to Orville Holmes (Orville) in an agreement dated August 31, 2006. (Ptf's Ex 19.6.) According the agreement's terms, Plaintiffs loaned Orville $65,000, interest-free, secured by a semi-truck and trailer worth $35,000. (*Id.*) Luana testified that,

although the agreement stated the loan was for $65,000, the full amount of the loan was really $100,000 because she had purchased the semi-truck and trailer for Orville. By letter dated August 2, 2007, Orville informed Plaintiffs that he intended to file for chapter 7 bankruptcy "regarding the $100,000 debt that I have owing to you." (Ptf's Ex 19.7.) Orville eventually filed for bankruptcy on March 18, 2009. (Ptf's Ex 19.9.) Luana testified that he never repaid the money.

Plaintiffs claimed an additional deduction for theft loss during tax year 2007 in part on the basis of actions taken by Luana's daughter, Lisa Holmes (Lisa). Luana testified that Lisa used three of her mother's credit cards to charge as much as $39,170.45. (Ptf's Exs 20 – 20.12.) In an email dated shortly before trial, Lisa confesses to the "fraudulent" charging of $31,000 on a stolen credit card to help support her husband's "floundering" trucking business. (*Id*. at 20.) After learning of Lisa's activity, Plaintiffs paid off their credit cards in March and April 2007.

The remainder of the 2007 theft loss deduction pertains to Kimberly Andrade Schultz (Kimberly),[2] a woman Luana's sister introduced her to in 2006.[3] Kimberly was at that time engaged in a lawsuit against Marion County seeking damages for an alleged assault she had suffered from a corrections officer during a prior period of incarceration. (Def's Exs Y-1 – Y-4.) Kimberly told Luana that she expected to receive at least one million dollars from the lawsuit, but that she needed money in the short term to pay for a car, rent, utilities, courtroom clothes, hotel rooms, and other expenses. Luana gave Kimberly assistance, most notably in the form of a new $28,000 car and nine cash payments totaling approximately $40,000 given over a period of

---

[2] Subsequent to the years at issue here, Kimberly Andrade's maiden name of Schultz was restored by a judgment of dissolution. (Def's Exs Y-17 – Y-18.) During the time she was acquainted with Luana, she appears to have used both names. (*See* Ptf's Exs 21.1 – 21.3; Def's Ex Y-1.)

[3] Luana testified that her sister met Kimberly at the sister's church, felt sorry for her plight, and introduced Kimberly to Luana in the hope that Luana would help her.

less than two weeks in May and June 2007. (Ptf's Exs 21, 21.1 – 21.3.) According to the printed terms of an unsigned "Agreement for Service" presented by Kimberly to Luana, Kimberly was to pay Luana $500,000 per year to provide a variety of personal and financial services. (Def's Exs W-1 – W-5.)

Plaintiffs' appeal of the 2008 tax year relates to a net operating loss carryover from 2007 and is consequent upon the resolution of the issues in that year. No further discussion of tax year 2008 is necessary here.

A.      *Profit or loss from HGP business*

1.      *Gross income*

Plaintiffs request that their 2006 Schedule C be amended to show a gross income of $5,115.60, and their 2007 Schedule C be amended to show a gross income of $11,986.54. (Ptf's Closing Arg at 2, 9.) These numbers are derived from spreadsheets Plaintiffs provided that allegedly record the income Luana received over the two years at issue from commissions, bonuses, and customer payments, as well as costs paid to HGP. (Ptf's Exs 3.3 – 3.4, 14.2 – 14.3.) Luana testified that customer payments reported on the spreadsheets are less than the catalog values of the goods sold because of customer discounts and because she did not report payment for the goods that she herself purchased for use as gifts and prizes.

Defendant charges that Plaintiffs' data lacks substantiating documentation and requests that the court find a gross income of $19,694.48 in 2006 ($3,870.48 higher than the adjusted amount in the Notice of Deficiency) and a gross income of $14,892.91 in 2007 ($2,114.91 higher than the adjusted amount in the Notice of Deficiency). (Def's Closing Arg at 1,3; Def's Exs A-3, B-3.) Defendant arrives at these figures by assuming that gross receipts are equal to the catalog value of all goods sold, which is known from the HGP commission statements provided by

Plaintiffs. (Def's Exs AA, BB; Ptf's Exs 3.5 – 3.16, 14.4 – 14.15.) Based on Luana's testimony regarding the standard catalog markup, Defendant calculates the cost of these goods at 70 percent of catalog value. (*See* Def's Exs AA, BB.) Defendant would also include in Plaintiffs' 2006 income an additional $320.51 that Plaintiffs claim was paid in credit card fees and other charges due to HGP. (*Id.*; *cf.* Ptf's Ex 3.3.)

2. *Expenses*

a. Advertising

Plaintiffs request an additional $289.25 in advertising expenses for the 2006 tax year. (Ptf's Closing Arg at 3.) Plaintiffs support their claim with a printed online order summary from "GeMagic" for goods and shipping totaling $289.25. (Ptf's Ex 4.) Luana testified that she used these goods to make signs for her display booths at trade shows. Defendant objects that the order summary does not have the buyer's name, and does not acknowledge any payment made.

b. Car and truck expenses

Plaintiffs request that mileage expenses of $9,683.64 be allowed for the 2006 tax year and $13,411.22 be allowed for the 2007 tax year. (Ptf's Closing Arg at 4, 10.) Defendant would disallow all mileage for lack of adequate substantiation.

For evidence of their mileage, Plaintiffs provide summary spreadsheets of each year's travels, and photocopies of every page from Luana's 2006 and 2007 day planners. (Ptf's Exs 5 – 5.100, 15 – 15.119.) The day planners record appointments. Some of the entries include an address, some do not. Some of the entries include a business purpose, some do not. Beside most of the entries in the planner, odometer readings are written in small, uniform print. The reported odometer readings ascend sequentially throughout the years, and on cross-examination Luana testified that she used the same car for all her business trips, a 2004 Yukon Denali.

Defendant draws the court's attention to apparent discrepancies in Luana's day planner. In some entries, the reported mileage does not fit the recorded trip. (*E.g.*, Ptf's Ex 5.1 (79 miles for a trip within Salem).) In others, the reported mileage is not consistent with similar trips. (*E.g.*, Ptf's Exs 5.47, 5.95, 5.98 (three trips to Costco with mileages of 36, 67, and 72, respectively).) Additionally, on cross-examination Luana admitted that "many" scheduled parties never took place, after being confronted with an entry for a "Pillows and PJ's" party that was scheduled at the same time she had testified she was with Kimberly. Odometer readings for that trip are recorded in the day planner and Plaintiffs claimed mileage for it. (Ptf's Exs 15, 15.59.)

### c. Supplies

In addition to the amounts allowed in Defendant's Notices of Deficiency (Notices), Plaintiffs request $804.89 in supplies expenses for tax year 2006 and $882.29 for tax year 2007. (Ptf's Closing Arg at 5, 10.) Defendant agrees to allow an additional $182.09 for 2006, and $139.93 for 2007. (Def's Closing Arg at 2, 4.) Defendant would disallow the rest as not being ordinary and necessary and as inadequately substantiated.

Plaintiffs provide a spreadsheet for each year entitled "Supplies Expense" and copies of receipts for purchases from various retailers. (Ptf's Exs 6 – 6.11, 16 – 16.7.) No receipt is provided for an $81.53 purchase from Borders listed on the 2006 spreadsheet. (*See* Ptf's Ex 6.) The receipts show that one of the purchases from Circuit City listed on the 2006 spreadsheet is a duplicate. (*See* Ptf's Ex 6 – 6.1.)

Items in dispute from 2006 include: software, portable music, an iPod with headphones, unmarked purchases from Borders, books on day trading, purchases from Ross Dress for Less alleged to be materials for display tables, and decorations from TJ Maxx. (Ptf's Ex 6.) Items in

dispute from 2007 include: an air conditioner, carpet cleaning for Plaintiffs' entire home, a dress shirt, items purchases as gifts, and a two-way radio. (Ptf's Ex 16.) Luana testified that these items were for use in displays at trade shows, as hostess gifts at parties, and for maintaining her home office.

d. Travel

Plaintiffs request additional travel expenses of $2,100.32 for the 2006 tax year and $7,285.04 for the 2007 tax year. (Ptf's Closing Arg at 5-6, 10-11.) Defendant would allow an increase of $1,864.59 for the 2006 tax year and $804.35 for the 2007 tax year. (Def's Closing Arg at 2, 4.) As part of its calculations, Defendant would disallow $20.38 of meals for a convention in Boise that it had previously erroneously allowed in excess of the statutory 50 percent maximum; Plaintiffs do not dispute this reduction.

Disputed areas in 2006 concern meals for a convention in Texas, a hotel stay for a convention in Boise, and Plaintiffs' trips to Las Vegas. Defendant disallows all disputed meals in Texas because they appeared to be for multiple persons and did not all contain a breakdown of charges. Defendant would allow only 25 percent of the hotel stay in Boise based on documentation that four people stayed in the room. Defendant would disallow two trips to Las Vegas as having their business purpose insufficiently documented.

Disputed receipts from the Texas convention include: $21.87 at the Texan Station on August 9 for chicken tenders and something with coconut; $15.55 for multiple drinks at Java Coast (date illegible); $13.94 for multiple drinks at Java Coast on August 12; a receipt for $80.97 without a breakdown of charges from Coco Moka on August 12 with the words "Big Dinner" and two names handwritten on it; and charges from the convention center for $63.28 and $99.09 on August 11 under the description "Riverwalk Cafe." (Ptf's Exs 7.7, 7.10 – 7.11, 7.13 – 7.14.)

Plaintiffs submitted a receipt for $122.10 from the Boise Airport Holiday Inn for March 24 through 26. (Ptf's Ex 7.21.) Plaintiffs also submitted an unsigned and undated document that appears to reflect planning for the Boise convention, in which Luana is assigned to a room with three other people and instructed to divide costs with them. (Ptf's Ex 7.27.) Plaintiffs testified that the other three never arrived due to car trouble.

Plaintiffs' two trips to Las Vegas, March 13-16, 2006, and March 30 through April 3, 2006, are documented with itinerary confirmations. (Ptf's Exs 7.29, 7.35.) Luana traveled with a companion on the first trip, and with Martin on the second. (*Id*.) She claimed expenses for her traveling companions on the basis of a doctor's note dated August 11, 2011, which states that "Patient was unable to travel alone due to lifting restrictions from 2006-2007." (Ptf's Ex 7.1.) Plaintiffs argued that the trips were necessary because Las Vegas "was worth exploring to see if this is where Luana's business growth should come from." (Ptf's Closing Arg at 6.) Plaintiff admitted that gambling occurred on at least one of these trips, but "that was not the reason for the trip and the gambling expenses were not taken." (*Id*.)

Disputed areas in 2007 include travel expenses for trips to Hawaii, Florida, and Cancún, Mexico. (Ptf's Closing Arg at 10-11.) Plaintiffs' Closing Arguments state that the trip to Hawaii was a prize Luana won from HGP, which was "considered training and an opportunity to look at new product." (Ptf's Closing Arg at 11.) Included in her traveling expenses to Hawaii is a $1,000 upgrade to first class made for "medical reasons." Plaintiffs argue that the Parkers' seven day trip to Mexico was primarily for the purpose of buying a time share for use as a sales incentive for Luana's down line. (*Id*.) Martin testified that the Mexico trip was also a vacation, but could not allocate the amount of time spent vacationing versus buying a time share. Luana testified that no one from her down line ever used the time share they bought.

The dispute regarding Florida is over expenses for the four days spent prior to the opening of HGP's Orlando Rally conference. Plaintiffs' meal receipts submitted during this time period include restaurants located at Disney Parks, Universal Studios Florida, and Islands of Adventure. (Ptf's Exs 17.26 – 17.29.) Luana testified that she was asked to show up early for "extra training," and argues that it is "not unreasonable to assume that the receipts for food were to talk with other designers and share ideas." (Ptf's Closing Arg at 11.)

e.      Gifts, awards, and prizes

Plaintiffs claim additional expenses for gifts, awards, and supplies in the amount of $2,309.21 for tax year 2006 and $2,107.32 for tax year 2007. (Ptf's Closing Arg at 6, 12.) Defendant would allow an additional $423.60 for 2006 and nothing more for 2007. Expenses were disallowed because receipts were illegible, because no log was submitted for gifts, and because some expenses were not ordinary and necessary business expenses. (Def's Closing Arg at 2-4.)

f.      Other expenses

In their Closing Arguments, Plaintiffs request an additional $924.50 in expenses for HGP samples, subscriptions, and education during the 2006 tax year. (Ptf's Closing Arg at 7.) Plaintiffs admit they "do not have documentation to support the amounts on the tax return" and therefore in an effort to be "fair" request only 50 percent of the amount listed on the return. (*Id*.)

B.      *Medical expenses*

Plaintiffs request 2006 medical expenses of $3,091.38 for Luana's son, Christopher Holmes (Christopher), and $11,560 for surgery undergone by Luana. (Ptf's Closing Arg at 6-7.) Defendant disallowed all medical expenses for lack of receipts and lack of documentary evidence that the surgery was medically necessary.

C.    *Holmes Automotive Services, Inc.*

Plaintiffs request that an ordinary loss of $100,000 be allowed for the loss related to Orville and his trucking business.  (Ptf's Closing Arg at 12-13.)  Defendant charges that any money transfer from Luana to her son-in-law, Orville, was a gift rather than a loan, and would disallow the entire amount.  (Def's Closing Arg at 4-6.)

D.    *Loss from Theft*

    1.    *Lisa Holmes*

Plaintiffs request the court to find a $39,170.45 theft loss from her daughter's, Lisa's, use of Luana's credit cards while traveling along with her husband, Orville, in the truck.  (Ptf's Closing Arg at 13.)  Defendant would disallow the entire amount, arguing that Luana gave Lisa her credit card.  (Def's Closing Arg at 6.)

    2.    *Kimberly Andrade Schultz*

Plaintiffs request the court to find that money Luana gave to Kimberly constitutes a theft loss of $69,729.  (Ptf's Closing Arg at 13-15.)  Luana alleges that Kimberly deceived her, even going so far as to have someone impersonate a lawyer.  (*Id*. at 14.)  Defendant disallowed the entire amount on the basis that Luana had not been deceived in any material way: Kimberly had in fact been the victim of a prison assault and she did have a lawsuit pending in Marion County, the outcome of which was unknown.  (Def's Closing Arg at 7.)

II.  ANALYSIS

The principal issues in this case are the calculation of profit or loss from Plaintiffs' business in 2006 and 2007, and Plaintiffs' right to claim deductions under Internal Revenue Code (IRC) section 165(a) for ordinary and theft losses during the 2007 tax year.  Additionally, Plaintiffs' claimed medical expenses for the 2006 tax year must be considered.  The parties agree

that the appeal of the 2008 tax year, concerning a net operating loss carryover, will be resolved by the determination of the prior year's issues.

A.    *Burden of proof*

On the questions presented here, Oregon law follows the federal Internal Revenue Code.[4] *See* ORS 316.007; ORS 316.012(1).[5] For guidance on matters of federal income tax law, the court looks to the interpretations given by federal courts and by the United States Commissioner of Internal Revenue. *See* ORS 314.011(3).

The party seeking affirmative relief from this court bears the burden of proof and must establish his or her case by a "preponderance" of the evidence. ORS 305.427. "Preponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971) (citing *McPherson v. Cochran*, 243 Or 399, 404, 414 P2d 321 (1966)). Evidence that is inconclusive or unpersuasive is insufficient to sustain the burden of proof. *Reed v. Dept. of Rev.* (*Reed*), 310 Or 260, 265, 798 P2d 235 (1990).

In this case, each party seeks affirmative relief to the extent that it wishes the court to change Defendant's adjustments as reported in its Notices of Deficiency. Thus, the burden of proof primarily falls upon Plaintiffs, although Defendant bears the burden to the extent that it requests this court to increase Plaintiffs' Schedule C gross income beyond the amount found on the Notices.

B.    *Business profit or loss*

IRC section 162(a) provides in relevant part that "[t]here shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on

---

[4] All references to the Internal Revenue Code (IRC) and accompanying regulations are to the 1986 code, and include updates applicable to 2006, 2007, and 2008.

[5] All references to the Oregon Revised Statutes (ORS) are to 2005 and 2007.

any trade or business * * *." Such expenses include expenses for the business use of a car or truck (*i.e.*, mileage incurred for work purposes), meals and lodging while traveling for business purposes, and other expenses both "ordinary" and "necessary" to a taxpayer's trade or business. IRC § 162(a).

"To be 'necessary[,]' an expense must be 'appropriate and helpful' to the taxpayer's business. * * * To be 'ordinary[,]' the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved." *Boyd v. Comm'r*, 83 TCM (CCH) 1253, 2002 WL 236685 at * 2 (citations omitted). The Oregon Tax Court has stated that "an ordinary expense is one which is customary or usual. This does not mean customary or usual within the taxpayer's experience but rather in the experience of a particular trade, industry or community." *Roelli v. Dept. of Rev.* (*Roelli*), 10 OTR 256, 258 (1986) (citing *Welch v. Helvering*, 290 US 111, 54 S Ct 8, 78 L Ed 212 (1933)).

In an income tax matter, a taxpayer must maintain records "sufficient to establish the amount of gross income [and] deductions[.]" IRC § 6001; Treas Reg § 1.6001–1(a). Because deductions are a "matter of legislative grace," taxpayers are entitled to them only insofar as they are substantiated by such records. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992); *Hansen v. Dept. of Rev.*, TC-MD No 081122D, WL 3089297 *6 (Sept 29, 2009). Further, "the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable." *Wichita Terminal Elevator Co. v. Comm'r* (*Wichita Terminal*), 6 TC 1158, 1165 (1946), *aff'd*, 162 F2d 513 (10th Cir 1947); *see also, e.g., Roberts v. Comm'r*, TC Memo 2012-197, WL 2890960 at *4 (July 16, 2012).

/ / /

Where a taxpayer has shown that expenses were incurred but cannot produce records sufficient to substantiate the amount, subject to limitations enumerated by regulation, in some cases the court may approximate the amount of the expense. *Cohan v. Comm'r* (*Cohan*), 39 F2d 540, 543-44 (2d Cir 1930). Yet such an approximation is only possible where there is evidence upon which the court may make a reasonable estimate. *Vanicek v. Comm'r*, 85 TC 731, 742-43 (1985) (citation omitted). And the rule of *Cohan* is inapplicable to expenses relating to travel, entertainment, gifts, or certain specified property (including passenger automobiles). IRC § 274(d)(4); *see also Sanford v. Comm'r*, 50 TC 823, 827-29 (1968).

Travel, entertainment, gift, and car expenses must be substantiated "by adequate records or by sufficient evidence corroborating the taxpayer's own statement[.]" *Id.* Accompanying regulation states:

> "[N]o deduction or credit shall be allowed with respect to -- (1) Traveling away from home (including meals and lodging), (2) Any activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity * * *, (3) Gifts * * *, or (4) Any listed property (as defined in section 280F(d)(4) and § 1.280F-6T(b)), unless the taxpayer substantiates each element of the expenditure or use * * * in the manner provided in paragraph (c) of this section. This limitation supersedes the doctrine found in *Cohan v. Commissioner*, 39 F.2d 540 (2d Cir. 1930)."

Temp Treas Reg § 1.274-5T(a). To substantiate the above expenses by "adequate records," a taxpayer must both maintain a contemporaneous record (such as an account book, diary, log, statement of expense, or trip sheets) and retain documentary evidence (such as receipts or paid bills). Temp Treas Reg § 1.274-5T(c)(2)(i); Treas Reg § 1.274-5(c)(2)(iii). These records and documents must substantiate the expense amount, date and time, the business purpose, and, in the case of persons receiving gifts or entertainment, the business relationship to the taxpayer. *See* IRC § 274(d).

/ / /

1. *Gross income*

Plaintiffs' deductions of customer discounts and personal purchases from their 2006 and 2007 Schedule C gross incomes are not allowable because no records of either the discounts or the business purpose of the purchases are in evidence.

It is Plaintiffs' responsibility to maintain records "sufficient to establish the amount of gross income [and] deductions[.]" IRC § 6001; Treas Reg § 1.6001–1(a). For this court to overturn the gross income established in Defendant's Notices of Deficiency, Plaintiffs must present persuasive evidence of Defendant's error. *Reed*, 310 Or at 265 (stating that evidence that is "inconclusive" or "unpersuasive" is insufficient to sustain the Tax Court's statutory burden of proof). The standard for persuasiveness of this court is a preponderance, meaning more likely than not. Furthermore, expenditures for gifts and prizes must be substantiated by adequate records pursuant to Temporary Treasury Regulation § 1.274-5T(c)(1).

Here, Plaintiffs did not provide receipts or any other record of who bought which product at what discount. Nor have Plaintiffs recorded and documented expenditures for gifts, prizes, and personal purchases. Plaintiffs have not complied with the records requirements of section 1.274-5T and have not met their burden of proof to establish that discounts and personal purchases should reduce their gross income.

On the other hand, Defendant has not met its burden to show that this court should increase Plaintiffs' gross income above the adjusted value on the basis of the HGP commission statements. The HGP commission statements are not a record of the amount charged to customers and are not conclusive evidence of gross income. *Reed*, 310 Or at 265.

Accordingly, the court finds that Plaintiffs' Schedule C gross income was $15,824 for tax year 2006, and $12,778 for tax year 2007.

2.      *Expenses*

        a.      Advertising

Taxpayers must maintain records "sufficient to establish the amount of gross income [and] deductions[.]" IRC § 6001; Treas Reg § 1.6001–1(a). Where a taxpayer fails to produce evidence in its possession that would bolster its claim if true, the court presumes that such evidence would in fact be unfavorable to the taxpayer. *Wichita Terminal*, 6 TC at 1165.

Here, Plaintiffs produced the printout of an online order summary to substantiate their claimed expenses, but no receipt. Because a receipt for an online order may be printed as readily as an order summary, the court must presume that production of a receipt would have been unfavorable to Plaintiffs' claim. *See id.* Accordingly, Plaintiffs' request for an additional $289.25 advertising expense for tax year 2006 is denied.

        b.      Car and truck expenses

For expenses pertaining to the use of passenger automobiles, taxpayers must substantiate claimed expenses with a combination of contemporaneous records and documentary evidence. Temp Treas Reg § 1.274-5T(a)(4) and (c)(2)(i); IRC § 280F(d)(4). However, where documentary evidence of a transportation expense is not readily available, it is not required. Treas Reg § 1.274-5(c)(2)(iii)(A)(2). The records must substantiate the time and place of the travel, the amount of the expense incurred, and the business purpose of the expense. IRC § 274(d). In general, the statutes and regulations foresee that taxpayers will be able to provide testimony regarding the business purposes of their expenses, but nevertheless insist on corroborating records to substantiate such documentation.

Here, Plaintiffs' mileage records are not sufficient to substantiate their claimed expenses. The discrepancy regarding the "Pajamas and PJ's" party shows that entries of odometer readings

were not made contemporaneously. Furthermore, the lack of addresses for many entries leaves the place of travel and the amount of mileage unsubstantiated in many instances. Finally, the business purpose of appointments such as trips to the casino and the doctor's office is not adequately documented.

Therefore, all of Plaintiffs' claimed mileage for 2006 and 2007 is disallowed for lack of adequate substantiation.

c. Supplies

None of Plaintiffs' additional requested supplies expenses are allowed, as they are inadequately substantiated by records and Plaintiffs have not demonstrated their business purpose.

To be deductible as an "ordinary" business expense, an expense must be "customary or usual" within "a particular trade, industry, or community." *Roelli*, 10 OTR at 258. Generally, personal, living, and family expenses, including the cost of maintaining a household, are not deductible. IRC § 262(a); Treas Reg § 1.262-1(b)(3). Expenses incurred for items generally associated with entertainment or gifts may only be deducted if substantiated by a combination of contemporaneous records and documentary evidence. Temp Treas Reg §§ 1.274-5T(a)(4) and (c)(2)(i). In all cases, taxpayers must maintain records "sufficient to establish the amount of gross income [and] deductions[.]" IRC § 6001; Treas Reg § 1.6001−1(a).

Here, several of Plaintiffs' claimed expenses are for entertainment items and gifts which are not adequately substantiated. These items include the iPod with headphones and portable music, the books, decorations, and gift items. Because no contemporaneous record of these items' use was submitted, a deduction for them is not allowed. *See* Temp Treas Reg §§ 1.274-5T(a)(4) and (c)(2)(i).

On the evidence submitted, the air conditioner, carpet cleaning, and dress shirt have not been shown to be for business use rather than for personal use and household maintenance. *See* IRC § 262(a). No records have been submitted to document the business purpose of these purchases. Neither have Plaintiffs established that the purchase of a two-way radio was an ordinary and necessary expense within Luana's trade. *Roelli*, 10 OTR at 258. The remaining claimed supplies expenses are not allowed because the receipts are not clear and Plaintiffs' records are insufficient to establish them as business expenses. IRC § 6001.

            d.      Travel

As with car and truck expenses, taxpayers must substantiate claimed travel expenses with a combination of contemporaneous records and documentary evidence. Temp Treas Reg §§ 1.274-5T(a)(1) and (c)(2)(i). The records must substantiate the time and place of the travel, the amount of the expense incurred, and the business purpose of the expense. IRC § 274(d); Temp Treas Reg § 1.274-5T(b)(2). In general, only 50 percent of expenses for meals are deductible. IRC § 274(n).

Luana's meals at the Texas convention are allowable for the most part because the business purpose for the trip is sufficiently substantiated. All receipts in question are allowed with exception of the two Java Coast receipts, one of which has an illegible date and the other of which appears to be service for multiple parties without any record of their identities or the business purpose of their meeting. Applying the 50 percent rule, Plaintiffs may take an additional deduction of $132.61 for Luana's trip to Texas in 2006.

Additionally, Plaintiffs' claimed hotel expenses for the Boise convention are adequately documented. The evidence that the room was intended to be shared does not outweigh Luana's testimony corroborated by the hotel receipt. Plaintiffs may claim the entire $122.10 for Luana's

trip to Boise in 2006. However, their Boise meals expenses are reduced by $20.38 in accord with IRC section 274(n).

The court is not persuaded that the two trips to Las Vegas were primarily for business purposes. Plaintiffs' tax returns and travel records show that they regularly engage in casino gambling and no business meetings in Las Vegas are documented. No deduction for the Las Vegas trips is allowed.

No additional travel deductions are allowed for tax year 2007 as the evidence shows that all the disputed expenses pertain to vacations rather than business trips. The trip to Hawaii was a prize for good performance and there are no records of business meetings while there. While HGP may have provided an opportunity for Plaintiffs to "look at new product" while in Hawaii, there is little doubt that a prize trip to a noted vacation destination was primarily intended as a vacation. In the case of the trip to Mexico, Plaintiffs' testimony was contradictory, with Luana testifying that the primary, if not sole purpose of the trip was to purchase a time share and Martin admitting that the trip had a double purpose as a vacation. Likewise, Plaintiffs' have not provided any contemporaneous records to support the business purpose of their expenses for the four days spent at amusement parks in Orlando.

e.      Gifts, awards, and prizes

Expenses for gifts fall under the same heightened substantiation requirements as travel expenses and must be supported by contemporaneous records as well as by receipts. Temp Treas Reg §§ 1.274-5T(a)(3) and (c)(2)(i). The records must describe the gift and establish its cost, the date it was given, its business purpose, and the business relationship of the recipient to the taxpayer. Temp Treas Reg § 1.274-5T(b)(5).

/ / /

Because Plaintiffs have provided only receipts without contemporaneous records to substantiate their gift purchases, no additional amount is allowed beyond the $423.60 agreed to by Defendant for tax year 2006.

> ### f. Other expenses

The court has no basis upon which to allow additional expenses requested by Plaintiffs in their Closing Arguments because these expenses were not discussed at trial and no documentation was submitted.

## C. *Medical expenses*

Taxpayers are generally allowed a deduction for "the expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent * * * to the extent that such expenses exceed 7.5 percent of adjusted gross income." IRC § 213(a). Only medical expenses actually paid during the taxable year are allowed as deductions; expenses merely incurred but not paid do not qualify. Treas Reg § 1.213-1(a)(1). As with other deductions, medical expenses must be substantiated by sufficient records. IRC § 6001.

For a taxpayer to deduct medical expenses for an adult child as a "dependent" under IRC section 213(a), that person must be either a "qualifying child" or a "qualifying relative" of the taxpayer. IRC §§ 213(a) and 152(a). To be claimed as a qualifying child, it must be shown (among other things) that the child shared the same principal place of abode as the taxpayer for more than half of the year, and did not provide over half of his own support. IRC 152(c). To be claimed as a qualifying relative, it must be shown (among other things) that over half of the individual's support was provided by the taxpayer. IRC § 152(d)(1)(C).

/ / /

Expenses incurred for cosmetic surgery are specifically excluded from the code's definition of "medical care" and are therefore not deductible. IRC § 213(d)(9). Breast surgery is considered cosmetic surgery unless it ameliorates a deformity, meaningfully promotes the proper functioning of the body, or treats a disease. *See id.*

Here, the claimed medical expenses for Christopher are not allowable because the evidence before the court is not sufficient to establish either that he was Plaintiffs' legal dependent under the IRC, or that Plaintiffs paid his medical bills during the tax year in question. Plaintiffs submitted no evidence regarding Christopher's place of abode or his means of support. IRC §§ 152(c), (d). Nor did they provide documentation to substantiate the claim that his bills were paid by Plaintiffs during the year for which the expenses are claimed. Only medical bills have been submitted, without receipts or corroborating bank statements.

Nor have Plaintiffs met their burden to show that Luana's breast surgery was for medical care rather than cosmetic surgery. The sole doctor's note submitted by Plaintiffs does not address this surgery or its medical purpose. Further, the fact that the surgery was paid for by cashier's check rather than through insurance tends to show that it was done for cosmetic rather than medical reasons.

D.    *Holmes Automotive Services, Inc.*

Plaintiffs' claimed ordinary loss of $100,000 is not allowable because circumstances show it was neither an investment nor a bona fide bad debt.

The proper characterization of a financial transaction as either an investment or a loan is a question of fact. *Cf. Gibbons v. Dept. of Rev.*, 9 OTR 285, 286 (1982) (question of fact whether payment by corporation is either loan or dividend). The nature of the transaction is determined by the parties' intentions, as evidenced by facts and by attending circumstances. *See*

*id*. at 286-87.  Relevant circumstances include the presence or absence of an executed note, designated interest, required collateral, specific repayment dates, and the treatment of the transaction in the company's books.  *See id*.

The court takes particular care before characterizing transactions within a family as bona fide bad debts.  *Bush v. Tax Commission* (*Bush*), 244 Or 261, 265, 416 P2d 1021 (1966).  " 'Loans' to members of the family invite close scrutiny.  Circumstances surrounding the advancement of money should be studied to determine whether a bona fide debt existed."  *Id.* (Citations omitted).

Here, despite Plaintiffs' assertions to the contrary, the overwhelming weight of evidence shows that Plaintiffs' transaction with Orville was not an investment in his company.  Plaintiffs have repeatedly characterized the transaction as a loan, even in their brief where they assert it was a business loss.  (*See*, *e.g*., Ptf's Closing Arg at 13 ("This loan was to help start a trucking business").)  The transaction was memorialized in a note executed August 31, 2006, by Orville as borrower and Plaintiffs as lenders.  (Ptf's Ex 19.6.)  Orville referred to the "$100,000 debt that I have owing to you" in his letter to Plaintiffs dated August 2, 2007.  (Ptf's Ex 19.7.)  Further, Orville's Schedule of Creditors filed with the bankruptcy court in 2009 lists a $100,000 debt to Plaintiffs.  (Def's Ex Z.)

Furthermore, the evidence submitted is insufficient to persuade the court that this was a bona fide bad debt as opposed to a gift from a mother to her son-in-law.  The transaction requires close scrutiny because of the familial relationship.  *Bush*, 244 Or at 265.  The note submitted in evidence lacks telltale signs of a true debt: there is no interest charged, no late fee, and no maturity date.  (Ptf's Ex 19.6.)  To the contrary, the note explicitly states that "Borrower may repay the Loan in full at any time after the date of this agreement without penalty."  (*Id*.)  The

loan was also undersecured, backed up only by the $35,000 truck reportedly purchased by Plaintiffs. (*Id*.)

Accordingly, the court concludes that the transfer of money was a gift and does not qualify for a tax deduction as an investment or a bad debt.

E.       *Loss from theft*

Taxpayers are allowed a deduction for losses of property arising from theft. IRC §§ 165(a), (c). For purposes of IRC section 165, the court construes the term "theft" broadly to include any form of "wrongful misappropriation" under the laws of Oregon. *Vieceli v. Department of Revenue*, __ OTR __, WL 4817045 at *3 (Nov 29, 2010) (slip op at 6).

A person commits theft by deception when he or she "[c]reates or confirms another's false impression of law, value, intention or other state of mind which the actor does not believe to be true" and obtains property thereby. ORS 164.085. The false beliefs must be of present facts. Statements that are merely "erroneous predictions of the future conduct of independent third parties" will not sustain an action for fraud, and, by analogy, do not suffice to constitute theft by deception. *See Whitlatch v. Bertagnolli*, 45 Or App 985, 990, 609 P2d 902 (1980).

Here, Plaintiffs' testimony establishes that they suffered no theft loss from the actions of Lisa because they were fully aware of her actions when they paid off the credit cards. If it is true that Lisa fraudulently used Luana's credit cards, then Lisa, not Luana, was liable to repay the money to the issuing bank. Plaintiffs' loss was incurred only when they determined to pay off the cards rather than report Lisa's fraudulent activity. By paying off that debt, Plaintiffs effectively made a gift to Lisa to relieve her of her liability to the issuing bank.

With regard to Kimberly, Plaintiffs' testimony was not wholly credible. While the court is willing to believe that Luana in her generosity would help out a needy person, inadequate

explanation was given for the highly unusual form her assistance took; *e.g.*, cash payments of several thousand dollars made daily over a period of almost two weeks. Other aspects of testimony strain credulity, such as a claim by Luana that police told her Kimberly was an undercover informant.

Even assuming the accuracy of Plaintiffs' testimony, however, they have not established that their loss was due to theft. Plaintiffs variously testified that they helped Kimberly out of sympathy, as part of an employer-employee relationship, or as part of an agreement to receive a large cash payout after she won her pending lawsuit. Luana testified that her sympathy was based on Kimberly's poverty and need; no evidence was presented that Kimberly was poor or needy. The nature of the employer-employee relationship between Kimberly and Luana was left unclear, but no allegation was made that Kimberly failed to perform some job duty.

Because Kimberly did have a pending lawsuit at the time she received assistance from Plaintiffs, the claim to deception rests on a conversation Luana allegedly had at lunch with a woman who pretended to be Kimberly's attorney, Ana Potter. The court doubts that this conversation took place as reported, in part because Luana originally reported to Defendant that the lunch in question was held with "Kim and Maria," rather than with Ana Potter. (Def's Ex V-1.) As the eventual result of that lawsuit hinged on future decisions by a court or a jury, it was not a subject upon which either Luana or Kimberly could have had factual knowledge at the time of the alleged fraud. Plaintiffs' evidence fails to show that their decision to bankroll it was a result of a "false impression of law, value, intention or other state of mind" rather than merely a bad bet.

/ / /

/ / /

## III. CONCLUSION

After careful evaluation of the evidence before it, the court concludes that Plaintiffs' appeal is to be granted in part with respect to Defendant's adjustment of their business profits, and denied with respect to Defendant's adjustment of their medical expenses, ordinary losses, and theft losses. The court finds that Plaintiffs' Schedule C gross income was $15,824 for tax year 2006 and $12,778 for tax year 2007. In tax year 2006, deductions are allowed of $132.61 for Luana's meals in Texas and $122.10 for Luana's hotel stay in Boise, in addition to deductions agreed to by Defendant during the course of the appeal. $20.38 of the previously allowed deduction for meals in Boise is now disallowed. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' 2006, 2007, and 2008 Oregon personal income tax liability and the amount of their surplus refund, if any, shall be calculated in accordance with the findings and conclusions stated herein.

IT IS FURTHER DECIDED that Plaintiffs shall pay interest and penalties, if any, in accordance with the findings and conclusions stated herein.

Dated this ____ day of October 2012.

_____
DAN ROBINSON
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Dan Robinson on October 8, 2012. The Court filed and entered this document on October 8, 2012.*